UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALLEGRO VENTURES, INC., | ) | Case No. 11-cv-2009-L(WVG) |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES MOTIONS *IN LIMINE* [DOCS. 59, 60, 61, 62, 63, 64, 65, 66, 68, 69, 70, 71, 72, 73, 74, 75]** |
| v. | ) | |
| MICHAEL W. ALMQUIST, | ) | |
| Defendant. | ) | |
| | ) | |

On August 31, 2011, Allegro Ventures, Inc. ("AVI") filed a complaint against Michael Almquist ("Almquist"), seeking declaratory relief under general maritime law. On July 24, 2013, this Court granted Almquist's motion to realign parties for trial, designating Almquist as the Plaintiff, and AVI the Defendant. (Doc. 53.) This admiralty action arises out of a dispute concerning whether Almquist was employed as a seaman in service of AVI's vessel when he suffered from a seizure that eventually led to the discovery of metastatic melanoma in his brain and lung. Now pending before the Court are the parties' motions *in limine*.

The Court found these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, and as

indicated below, the Court **GRANTS IN PART** and **DENIES IN PART** the parties
motions *in limine*.

## I.   BACKGROUND

AVI is incorporated in Nevada and owns the seventy-foot luxury motor yacht
ALLEGRO ("M/Y ALLEGRO"). (*Frey Decl.* [Doc. 29–2] ¶ 2.) AVI's President, Leo
Frey ("Frey"), is principally responsible for the ownership, operation, and maintenance
of the M/Y ALLEGRO. (*Id.*) Almquist is a resident of Carlsbad, California, who works
in the maritime industry and is licensed by the United States Coast Guard to operate up
to 200-ton vessels for near-coastal voyages. (*Almquist Decl.* [Doc. 18-3] ¶¶ 1, 4.)

Since 1993, Almquist has been doing business as Almquist Yacht Management.
(*Almquist Dep.* [Doc. 29–7] Vol. I, 63:17–20.) Under this fictitious business name,
Almquist provides boat-maintenance and captain services to various yacht-owning
clients in the Southern California area. (*Almquist Decl.* ¶ 4.) When servicing their yachts,
Almquist charges clients an hourly rate plus expenses for all work performed on the
vessels. (*Id.* ¶ 10.)  He also charges for his travel time if he is making an after-hours trip
for a specific client. (*Id.*) Additionally, Almquist provides captain services to his clients
at a flat rate of $300 per day, often for trips to Catalina Island or the area around San
Diego Bay. (*Id.* ¶ 7.) For several of these clients, he considered himself the "designated
captain," where he has an agreement to regularly maintain and repair the clients' luxury
yachts as needed while docked, and remain available to take owners and guests out on
voyages for his flat-rate fee. (*Id.* ¶ 4.) Almquist provided a similar combination of these
services to AVI over a period of approximately twelve years, and it is this relationship
that forms the basis of this dispute.

On Thursday, November 18, 2010, Almquist delivered the M/Y ALLEGRO to the
Shelter Island Boat Yard at the request of Frey for the vessel to be hauled out to receive
its biennial shipyard maintenance. (*Almquist Decl.* ¶ 13.) Because Frey wished to discuss

what work was going to be performed on the vessel, he scheduled a meeting with Almquist to meet him at the boatyard over the weekend. (*Id.* ¶ 14.)

On Sunday, November 21, 2010, while driving to meet Frey at the boatyard, Almquist suffered a "seizure-like episode" and lost consciousness, crashing his pickup on the side of the freeway. (*Almquist Decl.* ¶ 15.) Emergency services transported Almquist to a hospital where he was treated for his injuries. (*Id.* ¶ 16.)

While receiving treatment, a brain scan was undertaken to discover the cause of the seizure. (*Almquist Decl.* ¶ 16.) It revealed a small lesion in Almquist's left parietal lobe. (*Id.*) Initially, doctors believed that the lesion may be some type of cerebral parasite. (*Id.*) However, on May 13, 2011, a craniotomy was performed to remove the lesion, and subsequent lab analysis determined that the lesion was a metastatic melanoma brain tumor. (*Id.*) A second tumor was later discovered in Almquist's right lung. (*Id.*) However, the primary melanoma site has not been found. (*Id.*) Almquist has since undergone chemotherapy and has accrued in excess of $700,000 in medical expenses relating to his automobile injuries and cancer treatments. (*Id.* 18.) AVI initially paid Almquist's medical expenses for the craniotomy and lung biopsy after being informed that Almquist was possibly infected with a parasite while working for AVI. (*Id.* ¶¶ 16, 18.) But after discovery of the melanoma, a dispute has arisen concerning whether AVI is responsible for paying any further medical bills related to both the automobile injuries and the cancer treatments. (*Id.* ¶ 18.)

On August 31, 2011, AVI commenced this action against Almquist. However, the parties were realigned pursuant to this Court's July 24, 2013 order. (*Order Realigning Parties* [Doc. 53].) Almquist asserts two claims: (1) maintenance and cure benefits from AVI for his injuries sustained in the automobile accident and for his cancer treatments, and (2) the willful and arbitrary failure of AVI to pay maintenance and cure. (*Answer* [Doc. 4] Part II.B. ¶¶ 8–18.) AVI seeks a declaratory judgment stating that Almquist was not employed as a seaman in service of the M/Y ALLEGRO and therefore is not entitled to maritime maintenance and cure benefits. (*Compl.* [Doc. 1] ¶¶ 15–18.) Additionally,

and alternatively, AVI asserts that Almquist is not entitled to maintenance and cure benefits because his injury was the result of "wilful misbehavior." (*Def.'s Opp'n #1* [Doc. 77] 1.)

On June 6, 2013, this Court denied both parties' cross motions for summary judgment.  In so doing the Court indicated that "this dispute in its entirety initially depends on whether Mr. Almquist was employed as a seaman in service of the M/Y/ ALLEGRO at the time of his injury."  (*Order Denying Summ. J.* [Doc. 47] 9.)  In order to make this determination, the Court first examined the "existence of an employer-employee relationship between AVI and Mr. Almquist, and then analyze[d] whether Mr. Almquist is entitled to seaman status as a matter of law."  (*Id.*)  This Court concluded that "a genuine issue of material fact exists as to whether an employment relationship existed under maritime law."  (*Id.* 12.)  The Court then found that Mr. Almquists' seaman status, which is a mixed question of fact and law, was inappropriate to decide on summary judgment and should be left to the jury as well.  (*Id.* 16-21.)

## II.    PLAINTIFF'S MOTIONS IN LIMINE

### A.    Motion #1 - To Exclude Evidence of Plaintiff's Smoking and Alcohol Use

Almquist seeks to exclude evidence of his smoking and alcohol use under Rule 402 of the Federal Rules of Evidence. (*Pl.'s Mot. #1* [Doc. 59] 5.) Almquist asserts that any evidence of smoking and drinking is irrelevant because there is no evidence linking smoking or drinking to metastatic melanoma. (*Id.* 5-6.) Alternatively, Almquist argues that admitting this evidence would be unfairly prejudicial "by portraying him in a bad light." (*Id.* 10.) AVI opposes, asserting that such evidence is relevant because "the jury is entitled to hear the cause of Plaintiff's accident so that it can determine (1) whether Plaintiff was in the 'service of the ship' at the time of the accident and (2) the viability of AVI's maintenance and cure defenses that Plaintiff is guilty of willful misconduct, of

concealing his pre-existing condition and that he could not have reasonably considered himself fit for duty by virtue of his chronic alcoholism." (*Def.'s Opp'n #1* [Doc. 77] 1.)

First, it is clear that evidence of Almquist's smoking and drinking do not bear on the threshold issue of Almquist's status as an employee or as a seaman.  As previously stated in this Court's order denying summary judgment, the jury must determine (1) whether Almquist was an employee of AVI, and, if so, (2) whether Almquist was employed by AVI as a "seaman." (*Order Denying. Summ. J.* 9.) However, such evidence is relevant to other issues to be addressed at trial.

"A defense which a ship owner can assert . . . is wilful misconduct by the seaman [citation], which is the *sole cause* of the illness or injury." *Smith v. Isthmian Lines, Inc.*, 205 F. Supp. 954, 955-56 (N.D. Cal. 1962)(emphasis added). Intoxication is considered wilful misconduct that will bar recovery in some cases.  *Id.* AVI asserts that due to Almquist's alleged drinking he was not in the "service of the ship," (*Def.'s Opp'n #1* 9-10), because his accident was the result of his chronic alcoholism, which constitutes wilful misconduct. (*Id.* 6-9.)

Here, Almquist seeks "cure" related to (1) the injuries he sustained as a result of the automobile accident, and (2) expenses related to treatment of his metastatic melanoma. (*Answer* Part II.B ¶ 12.)   Evidence of Almquist's history of alcohol use is relevant in determining the "sole cause" of the automobile accident and the cure expenses associated with those injuries.  The parties both acknowledge that AVI plans to introduce evidence of Almquist's alcohol use to support its defense of wilful misconduct.  (*Pl.'s Mot. #1* 8-9; *Def.'s Opp'n* #1 14,15).  Both parties also appear to agree that, such evidence does not address the "sole cause" of Almquist's metastatic melanoma, and, thus, is not relevant to the cure related to those medical expenses. (*Pl.'s Mot* #1 8-9; *Def.'s Opp'n* #1 14 n. 7 ("That AVI's expert physicians are not expected to testify that Plaintiff's melanoma was caused by smoking or alcohol abuse misses the point.")).

Almquist's claim that such evidence "is not relevant to any 'wilful misbehavior' defense, because *there is no evidence that Plaintiff's drinking or smoking caused his metastatic melanoma*" is accurate but incomplete.  (*Pl.'s Mot. #1* 5.)  Although the evidence is not relevant to determining the cause of the melanoma, it is relevant to the cause of the accident and the injuries sustained as a result of that accident, as explained above.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Almquist's motion *in limine* and **ORDERS** that evidence of Almquist's drinking and smoking is admissible only in regard to AVI's "willful misconduct" defense with respect to Almquist's claims for damages relating to the injuries sustained in the automobile accident, and not his damages in connection with his cancer.

### B.     Motion #2 - To Exclude Expert Testimony of James McMullen

Federal Rule of Evidence 702 allows expert opinion testimony so long as "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. Rule Evid. 702. "Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." *Mukhtar v. Cal. State. Univ.*, 299 F.3d 1053, 1063 & n. 7 (9th Cir. 2002) (internal quotation marks and citation omitted).

Almquist seeks to exclude the testimony of AVI's attorney expert witness, James McMullen, alleging the following: (1) the issue is not amenable to expert testimony; (2) his testimony concerning the applicable law invades the province of the Court; (3) his opinion on application of facts to the law invades the province of the jury; (4) his opinions are not useful or legally helpful as required by Rule 702; and (5) his opinions are argumentative and unreliable. (*Pl.'s Mot. #2* [Doc. 60] 3.)  Although listed as a separate reason, Almquist's first argument, that the issues in this case are not amenable

11cv2009

1   to expert testimony, appears to be a summary of the remaining four reasons. Thus, the

2   Court will consider each of those in turn.

3       Almquist asserts that Mr. McMullen should not be allowed to testify as an expert

4   on the law. The Court agrees. To the extent that Defendant seeks to have Mr. McMullen

5   testify about what the applicable law is for this case, this is not admissible.[1] However,

6   Defendant asserts that Mr. McMullen is called to testify as an expert concerning the

7   maritime industry. To this extent, Mr. McMullen's testimony does not invade the

8   province of the Court.[2]

9       Plaintiff next asserts that allowing Mr. McMullen "to testify as to his conclusion

10  on whether Captain Almquist was a seaman or not or whether he was had a sufficient

11  employment connection to the Yacht ALLEGRO to give rise to an obligation on the part

12  of the owner to pay maintenance and cure . . . would invade the province of the jury."

13  (*Pl.'s Mot. #2* 7.) Although Almquist provides no legal basis for this assertion, he

14  appears to base his argument on an anachronistic law which disallowed expert opinion

15  on ultimate issues on the basis that it usurped the role of the jury.  However, "[a]n

16  opinion is not objectionable just because it embraces an ultimate issue." Fed. Rule Evid.

17  704. Thus, Mr. Mullen's opinion based on the application of facts in this case to the

18  appropriate law does not invade the province of the jury.[3]

19      Almquist also asserts that Mr. McMullen's testimony is inadmissible because it is

20  not helpful to the trier of fact. Rule 702(a) requires that "the expert's scientific, technical,

21

22      [1]The Court notes that Mr. McMullen's expert report does, in fact, contain a lengthy legal
    analysis, which is not admissible. It is within the sole purview of this Court to establish the law
23  applicable to this matter. An expert has no authority to usurp that function.

24      [2]The Court notes that Mr. McMullen's expert report begins by stating, "I was retained . . .
    to render opinions and provide a maritime lawyer's understanding of the custom and practice in
25  the industry impacting the above-referenced case, as well as those industry standards impacting
    the issues in the above-referenced case." It is debatable whether an expert retained in his
26  capacity as a lawyer has the adequate basis to provide information concerning custom and
    practice within the maritime industry. However, Plaintiff has not objected to Mr. McMullen's
27  qualifications, so this issue is not before the Court.

28      [3]Plaintiff appears to recognize this as he refers to the "abolition of the ultimate issue rule"
    on page 7 of his motion.

or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Almquist's argument centers on Mr. McMullen's application of the "wrong laws and legal standards. " (*Pl.'s Mot. #2* 7.) As noted previously, to the extent that Mr. McMullen's testimony is in conflict with the applicable law previously set out by this Court, such testimony is inadmissible. However, AVI asserts that Mr. McMullen "is qualified to provide the jury with the background and customs of the conduct of large yacht and other vessel owners, including the type of services that they need performed, their crewing needs, and the way such marine vessels are operated and managed." (*Def.'s Opp'n #2* [Doc. 78] 1.) AVI asserts that this information is relevant to the issue of Almquist's alleged employment by AVI and his status as a seaman. (*Id.* 3-7.) The Court agrees with Defendant that such information would be helpful for the jury.

Finally, Plaintiff asserts that Mr. McMullen should not be allowed to testify because his opinions are argumentative and unreliable, and should therefore be excluded pursuant to Rule 403 because any probative value is outweighed by "undue prejudice to Plaintiff, confusion of issues and a waste of time." (*Pl.'s Mot. #2* 9.) Plaintiff provides no additional argument beyond this conclusory statement to support this argument, and the Court is unwilling to venture a guess as to Plaintiff's intended argument.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Almquist's motion *in limine* to exclude the testimony of attorney expert witness James McMullen. Mr. McMullen's expert testimony is allowed to the extent that his opinions are based on the correct legal standards set out by this Court.

### C.    Motion #3 - To Exclude Expert Testimony of Richard Cogswell

Almquist seeks to exclude the testimony of defense expert Richard Cogswell for the following reasons: "1) the two legal questions before the jury concerning seaman's status and the sufficiency of Plaintiff's employment- related connection to the vessel are not amenable to expert testimony; 2) Captain Cogswell's opinions do not take into account and are not based on the applicable legal test for employment in this

maintenance and cure context; 3) Captain Cogswell's opinions about what he perceives as practices in the 'Yacht Industry' are not relevant; and 4) Captain's Cogswell's opinions, which do little more than tell the jury how the good captain thinks the employment question should turn out, are simply not helpful to the trier of fact and, thus, must be excluded pursuant to Rule 702 of the Federal Rules of Evidence." (*Pl.'s Mot. #3* [Doc 61] 2-3.)

Almquist also asserts that Mr. Cogswell's testimony is not "helpful" to the jury, and is thus inadmissible. (*Pl.'s Mot. #3* 4.) While recognizing that Rule 704 allows "witnesses to give their opinions on ultimate issues," Almquist also notes that such opinions still "must be helpful to the trier of fact." (*Pl.'s Mot. #3* 4-5.)  AVI claims that Mr. Cogswell's testimony is helpful for the jury because "issues concerning the business of, and work involved in, maintenance of numerous large motor yachts are not within the common knowledge of the average layperson." (*Def.'s Opp'n #3* [Doc. 79] 4.) The Courts agrees and finds that such testimony would be helpful for the jury.

Plaintiff next asserts that Mr. Cogswell should not be allowed to testify because his opinions are not based on the proper law applicable to this case. To the extent that Defendant seeks to have Mr. Cogswell provide opinions based on the application of the incorrect law, this is not admissible. However, Defendant asserts that Mr. Cogswell is called to testify as an expert concerning the maritime industry. To this extent, Mr. McMullen's testimony does not invade the province of the Court.

Almquist asserts Mr. Cogswell's opinions concerning the practices in the "Yacht Industry" are not relevant because (1) there is no allegation of negligence, and (2) the yacht industry is not something separate and distinct from the maritime industry. (*Pl.'s Mot. #3* 6.) First, although there is no need to show a deviation from industry customs and practices in this case, as is relevant for negligence claims, customs and practices are still relevant for the jury in looking at the "venture as a whole." *Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1495 (9th Cir. 1995).  Second, the customs and practices of yacht owners and operators appear to be relevant to the "venture as a whole."  *Id.*

Plaintiff's final argument, that Mr. Cogswell's testimony simply tells the jury how to decide, is little more than a summary of previous arguments. Further, as Plaintiff himself conceded, and as this Court has already noted, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. Rule Evid. 704.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Almquist's motion *in limine* to exclude the testimony of defense expert Richard Cogswell.  Mr. Cogswell's expert testimony is allowed to the extent that his opinions are based on the correct legal standards set out by this Court.


### D.   Motion #4 - To Exclude Witness Not Disclosed During Discovery

Almquist seeks to exclude the testimony of six witnesses that he contends were not timely disclosed pursuant to Fed. R. Civ. P. 26. (*Pl.'s Mot. #4* [Doc. 62] 3.) AVI opposes on multiple grounds. (*Def.'s Opp'n #4* [Doc. 82] 2.)

Rule 26(a)(1) requires each party to provide to the other party the name of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses.  In addition to the initial disclosures required by Fed. R. Civ. P. 26(a)(1), the parties must provide pretrial disclosures which includes "the name and, if not previously provided, the address and telephone number of each witness–separately identifying those the party expects to present and those it may call if the need arises." Fed. R. Civ. P. 26(a)(3)(A)(i).  These disclosures must be made at least 30 days before trial. *Id*. Here, the Court ordered that these pretrial disclosures be made by May 28, 2013. (*Case Management Order* [Doc. 15] ¶ 11.)  The Court extended this deadline to May 31, 2013.  (*Order Continuing Deadline to Comply with Pretrial Disclosure Requirements* [Doc. 40].)

Rule 37(c)(1) gives teeth to the initial disclosure requirements of Rule 26(a), by forbidding the use of any information or witness that is not properly disclosed. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir.2008).  District courts have wide latitude to issue sanctions under Rule 37(c)(1):

> [Rule 37(c)] clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule ... [Rule 37(c) is] a "self-executing," "automatic" sanction to provide a strong inducement for disclosure of material ... Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded ... although the exclusion of an expert would prevent plaintiff from making out a case and was a "harsh sanction to be sure," it was "nevertheless within the wide latitude of" Rule 37(c)(1).

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001). According to Rule 37(c)(1), "the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or is harmless."

Both parties were warned at the outset of this litigation that sanctions would result if either party failed to comply with Rule 26(a). The Court's February 29, 2012 set the parties deadline to comply with rule 26(a)(1) as April 30, 2012, expressly stated that failure "to comply with this Order *will* result in the imposition of sanctions." (*February 29, 2012 Order* [Doc. 10] 2.) The parties were also warned that failure to comply with the Pretrial Disclosure requirements of Fed. R. Civ. P. 26(a)(3) "could result in evidence preclusion or other sanctions under Fed. R. Civ. P. 37." (*May 15, 2012 Order* [Doc. 15] ¶ 11.)

Almquist argues that on June 3, 2013, AVI filed its Fed . R. Civ. P 26(a)(3) disclosures, "and, for the first time, identified four new fact witnesses it intended to call at trial...Josh Frey, Brenda Boliba, Sam Eichenfield and Officer J.A. Contreras." (*Pl.'s Mot. #4* 2-3; *AVI Pretrial Disclosures* [Doc. 44] 2, 3.) Then, on July 11, 2013, AVI revised its 26(a)(3) disclosures, adding two more witnesses: Jon Haynes and James Blasic. (*Pl.'s Mot. #4* 3; *AVI Revised Pretrial Disclosures* [Doc. 50] 4, ¶ 3.) Almquist suggests that the purportedly untimely disclosure of these witnesses was neither substantially justified or harmless. (*Pl.'s Mot. #4* 3.) The Court disagrees.

AVI does not dispute that Brenda Boliba, J.A. Contreras, John Haynes and James Blasic were not disclosed as witnesses until their June 3, 2013 pretrial disclosures,

effectively conceding that these disclosures were untimely, and thus subject to sanctions. By not disclosing these witnesses, AVI prevented Almquist from taking discovery from them.  Under these circumstances, allowing their testimony would be patently unfair to Almquist.  AVI's arguments that Almquist knew of these witnesses, and is simply "invoking procedural niceties over witnesses he never would have deposed" rings hollow.  (*Def.'s Opp'n #4* [Doc. 82] 5.)  AVI, and the Court for that matter, cannot speculate as to how Almquist would have used the information that AVI failed to disclose.  However, it is clear that AVI was required to disclose this information, and did not.  Due to this failure, Almquist had no idea that AVI planned to use the testimony of any of these witnesses during trial.  Moreover, AVI fails to provide any justification whatsoever as to why they failed to timely disclose these witnesses.  Their entire argument focuses on whether their failure has harmed or will harm Almquist, but fails to explain why witnesses that they intended to rely on during trial were not named until after multiple discovery deadlines had passed.

AVI's argument regarding Josh Frey and Sam Eichenfield is slightly different.  In addition to the arguments above, AVI contends that Almquist identified Josh Frey as a witness that Almquist might use in his initial disclosures, so he is "hardly a 'secret witness'".  (*Def.'s Opp'n* 5.)  In other words, it appears that AVI takes the position that it satisfied its Rule 26 obligations with respect to Josh Frey by alluding to him during the course of discovery, rather than exchanging specific witness lists as required.  However, the fact that Almquist knew the identify of Josh Frey does not demonstrate that AVI's failure to disclose him as a witness was substantially justified or harmless.  AVI provides no explanation as to why it could not have disclosed Josh Frey as a witness before the relevant deadlines, and therefore, fails to show that this failure was substantially justified.

AVI next argues that Sam Eichenfield should not be excluded because Almquist has known Mr. Eichenfield for years and was identified in AVI's initial disclosures as "Owner of M/Y ROSEMARY'S BABY."  (*Opp'n* 3.)  Again, Rule 26(a) requires the

parties to furnish names of witnesses to be relied on at trial.  AVI failed to do this, and has provided no explanation as to why their failure to do so was substantially justified. As explained above, knowing who a witness is far different than knowing that the other party intends to rely on their testimony.

If these witnesses were allowed to testify at trial, Almquist would have no time to depose them and prepare for trial.  This would work a substantial hardship on Almquist, if it were even possible.  Thus, the Court finds that exclusion of these witnesses is an appropriate sanction[4]. Because it would be unfair for AVI to present these witnesses in trial, they are hereby excluded from trial under the Court's discretion and pursuant to Fed. R. Civ. P. 37. Accordingly, the Court **GRANTS** Almquist's motion *in limine* to exclude witnesses not disclosed during discovery.

E. **Motion #5 - To Exclude or Limit Evidence of PCIP Insurance Purchased by Plaintiff After Defendant Denied his Maintenance and Cure Claim**

Almquist seeks to exclude evidence of the Pre-Existing Condition Insurance Plan ("PCIP") he purchased after Defendant ceased paying for his medical treatment because the expenses paid by PCIP are subject to a lien. (*Pl.'s Mot. #5* [Doc. 63] 2.) Defendant opposes on the grounds that such evidence is relevant to (1) the amount of damages to award, and (2) AVI's defense that it is not liable for punitive damages. (*Def.'s Opp'n #5* [Doc. 83] 2, 8.) In their motions, both parties discuss the collateral source rule. Plaintiff argues that this rule disallows any offset in damages, and thus, evidence of Plaintiff's PCIP is not relevant to the issue of damages. (*Pl.'s Mot. #5* 3.) Defendant argues that the collateral source rule is not applicable to maintenance and cure claims, and thus, the jury should be presented with evidence that would reduce Plaintiff's award of damages.

---

[4]AVI's argument that there is ample time between their tardy disclosure and trial.  (*Opp'n* 6.)  While this may have been true at the time the motions in limine were filed, it is no longer the case.  Almquist cannot be prejudiced by failing to depose these untimely disclosed witnesses.

1    (*Def.'s Opp'n #5* 6.)  Additionally, Defendant argues that even if the collateral source

2    rule applies, the amount of damages is limited to the expenses "actually incurred," which

3    requires evidence of the amounts accepted as full payment from PCIP, not simply the

4    amount billed by the medical providers. (*Id.* 6-7.)  Both parties' arguments miss the

5    bigger picture.

6         First, it is important to understand that liability for medical bills comes from

7    Almquist's claims for "cure."  As this Court has already explained, a seaman has the

8    right to "cure," which encompasses "the reasonable medical expenses for treatment until

9    the seaman is fit for duty or until maximum recovery is reached."  *Moore v. United*

10   *States*, 817 F. Supp. 2d 1136, 1150 (N.D. Cal. 2011) (citing *Vella v. Ford Motor Co.*,

11   421 U.S. 1, 5 (1975)).  Second, because the Court notes that if Almquist prevails in this

12   matter, he will be entitled to "reasonable medical expenses . . . until maximum recovery

13   is reached."  Therefore, "cure" is by definition both backward and forward-looking.  If

14   Almquist is found to be entitled to "cure," AVI will be potentially obligated to pay for

15   his past and future medical expenses.  So, even if his insurance company enforces a lien

16   on the potential judgment in the future, AVI will still be liable for reimbursing Almquist

17   for his payment of that lien.  In addition, the insurance records are relevant to prove the

18   amounts actually accepted by the medical providers as full payment, which is the

19   appropriate measure for damage calculations.[5]

20        Accordingly, the Court **DENIES** Almquist's motion *in limine* to exclude or limit

21   evidence of PCIP insurance.

22

23

24

25   _____

26   [5]  The Court recognizes that during trial, Almquist seeks only "past cure."  (*Joint Statement of Relief Sought* [Doc. 56].)  This does not change the Court's ruling on this issue.

27   Even if Almquist is only presenting evidence of past medical expenses, both parties will need to introduce evidence of PCIP insurance to establish what damages Almquist is entitled to.  And, if Almquist is successful in establishing the existence of a lien on a judgment in this case, this

28   evidence must come in to avoid the unfair result of his damages award for cure being reduced by an amount that he is obligated to repay to the insurance company.

**F.     Motion #6 - To Preclude Defendant and its Witnesses and Counsel From Referring to Almquist Yacht Management as a "Company"**

Almquist seeks to preclude the use of the term "company" when referring to Almquist Yacht Management claiming such term is "misleading and legally improper." (*Pl.'s Mot. #6* [Doc. 68] 2.) AVI opposes. (*Def.'s Opp'n #6* [Doc. 84].)  Despite the parties quibbling over the definition of the word company, Almquist fails to explain why referring to Almquist Yacht Management as a "company" will mislead or confuse the jury.  Without any explanation as to why the use of "company" should be excluded, the Court **DENIES** Plaintiff's Motion to preclude AVI and its witnesses and counsel from referring to Almquist Yacht Management as a "company."

**G.     Motion #7 - To Exclude Evidence of Plaintiff's Relationships with Other Yacht Owners**

Almquist seeks to exclude evidence of his relationship with other yacht owners as irrelevant. (*Pl.'s Mot. #7* [Doc. 65] 3.)  He argues that "evidence of Plaintiff's relationships with any other yacht owner/employers and the services he performed or did not perform for them under different arrangements has no bearing on any issue to be decided in this trial and should be therefore excluded entirely." (*Id.* 4.)  AVI opposes on the grounds that such information is relevant to Almquist's ability to select his own customers and make his own work schedule, two factors that AVI alleges go to the issue of whether Almquist was an employee of AVI. (*Def.'s Opp'n #7* [Doc. 85].)

In order to rule on this motion, the Court must determine what legal authority Almquist makes his exclusion motion under.  This is problematic, because noticeably absent from the motion is any reference to any evidentiary rules, standards, or case law. However, it appears that Almquist's argument hinges exclusively on the relevance of this information.  Therefore, the Court analyzes this motion under FRE 402, "[i]rrelevant evidence is not admissible."

1    As previously stated in the Court's order denying summary judgment, "[w]hile

2    there is no settled set of criteria for determining" whether an employment relationship

3    exists, "the Supreme Court has indicated that '[o]ne must look at the venture as a whole."

4    The Ninth Circuit has followed this guidance by using a series of factors that focus on

5    the degree of control exercised by the alleged employer over the injured party. *Glynn*, 57

6    F.3d at 1495.  Factors to be considered include "payment, direction, supervision, and

7    source of the power to hire and fire." *Id.* (citing *Matutute v. Lloyd Bermuda Lines, Ltd.*,

8    931 F.2d 231, 236 (3d Cir.1991); *accord Boy Scouts of Am. v. Graham*, 86 F.3d 861, 865

9    (9th Cir. 1996) (citing *Heath v. Am. Sail Training Ass'n*, 644 F. Supp. 1459, 1468 (D.R.I.

10   1986)). Other factors include considering who has the power to determine the route of

11   the ship and the activities of its crewmembers. *See McAllister*, 337 U.S. at 795.

12   In light of this legal framework, it appears that the employment inquiry is a sort of

13   "totality of the circumstances" test which allows the fact finder to look at any number of

14   factors that relate to "the venture as a whole." AVI first argues that "[e]vidence that

15   Almquist provided services to at least eleven different yacht owners, at the same time he

16   was doing work for AVI, is highly probative of the scope of AVI's very limited direction

17   and supervision of his activities." (*Opp'n* 3.)  Although the Court is unconvinced that

18   this evidence is "highly probative," the evidence still does appear relevant.  If evidence

19   is introduced regarding Almquist's other work and arrangements, this evidence could

20   help the jury decide how Almquist operated with respect to AVI. Therefore, it appears

21   that this evidence is relevant to examining "the venture as a whole."  This evidence will

22   still be weighed against any direct evidence of Almquist's work for AVI.

23   Additionally, AVI asserts that this evidence is relevant to the determination of

24   Almquist's seaman status.  AVI argues that because Almquist worked for other vessels, a

25   jury could conclude that he did not have "a connection with a vessel in navigation which

26   is substantial in terms of both its duration and nature." *[Def.'s Opp'n 7* [Doc. 85] 4.)

27   As the Court already stated in its Order denying summary judgment, part of the

28   inquiry into seaman status is whether the "purported seaman must have a connection to a

vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Keller Found./Case Found. v. Tracy*, 696 F.3d 835, 842 (9th Cir. 2012) (citing *Chandris*, 515 U.S. at 368).  Evidence of Almquist's other work is relevant, at a minimum, to the "duration" of his connection to M/Y ALLEGRO.  If Almquist was working for another vessel, then he could not have been working for AVI on M/Y ALLEGRO.  Almquist will of course have the opportunity to present direct evidence of the "duration" of his connection with M/Y ALLEGRO, and the jury will have to weigh the competing.

Accordingly, the Court **DENIES** Almquist's Motion to exclude evidence of his relationships with other yacht owners.


### H.    Motion #8 - To Exclude Trial Exhibit No. FL

Almquist seeks to exclude Trial Exhibit No. FL, a chart the purports to summarize Almquist's hourly work, for three reasons: (1) there is no sponsoring witness; (2) the information is not reliable; and (3) "the document seeks to draw a distinction not recognized in the law between the time Captain Almquist spent "captaining" or piloting the ALLEGRO versus the time he spent working on 'cleaning or maintenance' of the vessel." (*Pl.'s Mot. #8* [Doc. 66] 3.)

AVI contends that this chart is admissible under rule 1006, which states "[a] proponent may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court" so as long as it is made available to other parties. Fed. R. Evid. 1006.  AVI asserts that the chart was prepared using invoice information provided, in substantial part, by Almquist.  Whether or not AVI cannot introduce a similar exhibit under Rule 1006 is a question that will be resolved at trial.  However, the chart, as it is formatted now, is inadmissible for the following reasons.

With regard to Plaintiff's third reason, Defendant argues that the document is relevant because "Plaintiff can only count toward the *Chandris* 30% rule of thumb, the

hours he spent actually at sea navigating, and not his dockside cleaning and maintenance hours." (*Def.'s Opp'n #8* [Doc. 86] 7.) While the actual hours stated in the chart for each of these categories may be an accurate reflection of the invoice details and work performed, the summarization of the data in this manner is misleading because it implies that this is the correct allocation for purposes of the 30% rule. However, the actual rule is less clearly defined, stating "a worker who spends less than about 30 percent of his time *in the service of a vessel in navigation* should not qualify as a seaman[.]" *Tracy*, 696 F.2d at 842 (quoting *Chandris*, 515 U.S. at 371) (emphasis added). Thus, it is for the jury to determine which of Almquist's activities – including captaining, cleaning, and maintenance – should be considered "in the service of a vessel in navigation." This chart implies that only those hours that Almquist spent "captaining" are "in the service of a vessel in navigation." However, AVI has not provided any authority supporting such a distinction. Thus, the probative value of this exhibit is outweighed by concerns of misleading the jury.

Accordingly, the Court **GRANTS** Almquist's Motion to exclude trial exhibit No. FL.

## III.   DEFENDANT'S MOTIONS IN LIMINE

### A.   Motion #1 - To Exclude Evidence of Insurance and Related Matters

AVI argues that evidence of insurance and related matters should be excluded under Federal Rules of Evidence 411, 401, and 403.

"Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411.

AVI maintains that evidence of insurance should be excluded pursuant to rule 411 because "[t]he courts have with substantial unanimity rejected evidence of liability insurance for the purpose of proving fault… [m]ore important, no doubt, has been the

feeling the knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds." (*Def's Mot. #1* [Doc. 69-1] 5) (quoting Fed. R. Evid. 411, Advisory Committee Notes - 1972 Proposed Rules.)  AVI is mistaken.

Almquist's claim for maintenance and cure does not rely on Plaintiff proving any negligence or other wrongful acts, rendering the exclusionary power of Rule 411 inapplicable.   Theoretically, AVI's argument can only apply to Almquist's claims for punitive damages.  (*See Answer* [Doc 4] 8-9.)  However, this is never mentioned in the instant motion, and Plaintiff has submitted that "the insurance-related evidence in this case is not being offered to prove negligent, reckless or wrongful conduct." (*Pl.'s Opp'n #1* [Doc. 87] 8.)  Defendant also argues that, "if the jury were advised that there was insurance covering a crewmember, it might immediately assume that Plaintiff was covered and find him to be a seaman (crewmember) without engaging in the legal analysis necessary to a determination of seaman status." (*Id.* 6.)  It is unclear how this argument connects to Rule 411, and Defendant provides no legal basis, authority, or substantive argument to support this conclusory statement.  Therefore, the Court finds that evidence of insurance is admissible under Rule 411, as it is not being offered to "prove whether [AVI] acted negligently or otherwise wrongfully."

Additionally, AVI argues that this evidence should be excluded because it is not relevant, and to the extent that it is relevant, that the admission of the evidence would be unduly prejudicial. (*Def.'s Mot. #1* 7.) Specifically, AVI argues that "[a] jury would certainly be confused and mislead when more than half of the exhibits Plaintiff seeks to introduce relate to and reference insurance" when this case "does not even have an insurance company as a party and does not involve issues of insurance coverage." (*Id.*) The Court disagrees.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Almquist argues that evidence of insurance is relevant to establish: (1) his relationship with the M/Y ALLEGRO; (2) Defendant's control over the enterprise: (3) his position as an employee; (4) as impeachment evidence against Leo Frey; and (5) both as direct evidence of the claims handling process and as impeachment evidence against Teresa McNail, the insurance claimsperson who denied the maintenance and cure claim. (*Pl.'s Opp'n #1* [Doc. 87] 1.)  The Court agrees.  As explained above, the jury must decide whether an employment relationship existed between Almquist and AVI by analyzing the "venture as a whole."  Information regarding AVI's insurance application and insurance policy is directly relevant to this calculus.  Further, the Court finds that any prejudice that Defendant might suffer as a result of this evidence is not so significant that it outweighs the probative value.

Accordingly, the Court **DENIES** AVI's motion *in limine* to exclude evidence of insurance and related matters.

**B.    Motions #2 - To Preclude Evidence of Subjective Belief of Employment/Seaman Status**

AVI seeks to preclude Almquist from introducing evidence or testimony reflecting a subjective belief as to whether he was a seaman, "captain," or "master," asserting such evidence is not relevant. (*Def.'s Mot. # 2* [Doc. 70-1] 1.)  Almquist opposes, arguing that "the 'total circumstances' of his employment are relevant and admissible to determine whether Almquist had the required relationship or connection to a vessel in navigation to qualify as a seaman." (*Pl.'s Opp'n #2* [Doc. 88] 3.)

Almquist's testimony regarding his relationship with AVI is highly relevant to the issues to be tried in this case.  This includes his subjective belief as to whether he was a

"seaman," "captain," or "master."  At this time, the Court is not convinced that introduction of this testimony will unfairly prejudice AVI, especially because Almquist will be subject to cross examination and AVI will have the opportunity to introduce evidence and present expert testimony to contradict said testimony. AVI's argument that "Plaintiff is not an expert, was not disclosed as one, and therefore cannot express opinions" is incorrect.  (*Def.s' Reply #2* [Doc. 96] 4.)  Indeed, the Federal Rules of Evidence explicitly allow lay witness testimony.  Fed. R. Evid. 702.

Accordingly, the Court **DENIES** AVI's motion *in limine* to preclude Almquist from testifying about his subjective belief that he was employed by AVI as a seaman, "captain," or "master."

## C.     Motion #3 - To Preclude Undisclosed Expert Opinions

Federal Rule of Civil Procedure 26(a)(2), concerning the required disclosures in connection with expert testimony, provides:

> (B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.
>
> . . .
> (C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

AVI argues that Almquist should be precluded from introducing opinion testimony from Drs. Sabina Wallach, Tawny Ngo and Frederick J. De La Vega, Almquist's treating

physicians, because he failed to properly disclose these experts and provide the required reports under FRCP 26(a)(2)(B) and (C).

Plaintiff opposes, stating that all three doctors were disclosed on Plaintiff's witness list, but that "[n]one of these treating doctors were retained as expert witnesses by Plaintiff and none submitted an expert report." (*Pl.'s Opp'n #3* [Doc. 89] 2.) Plaintiff contends that because his treating physicians were not retained as experts, they fall within the exception to Rule 26(a)(2)(B)'s disclosure requirement as set out in *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 825-26 (9th Cir. 2011).

"*Goodman* confirms that a treating physician is not required to make a Rule 26(a)(2)(B) report to the extent the treating physician's opinions are formed during the course of the treatment and limited to the scope of treatment rendered." *Robinson v. HD Supply, Inc.*, 2013 WL 3816009 * 4 (E.D. Cal. July 19, 2013). However, "when identifying experts such as treating physicians who are not retained . . . the party must state the 'subject matter' on which the witness is expected to testify and 'a summary of the facts and opinions' to which the witness is expected to testify." *Id.* Almquist presents no evidence or argument that he timely disclosed these treating physicians to AVI, or that he provided the "subject matter" and "summary of facts and opinions" required by Rule 26(a)(2)(C). Because Almquist fails to explain why this omission was substantially justified or harmless, the Court excludes these witnesses from testifying because it would unfairly prejudice AVI, which never had a chance to prepare for this testimony.

Accordingly, the Court **GRANTS** AVI's motion *in limine* to preclude any undisclosed expert witness testimony from Drs. Sabina Wallach, Tawny Ngo, and Frederick J. De La Vega.

> **D.    Motion #4 - To Preclude Evidence and Testimony of Dockside Maintenance Work by Plaintiff**

22

AVI seeks to preclude Almquist "from offering testimony or documentary evidence of dockside maintenance work performed by Almquist to count toward and as support for his calculation of time spent in service of a vessel." (*Def.'s Mot. #4* [Doc. 72-1] 1-2.)  Specifically, AVI argues that "maintenance work on a vessel safely tied to its dock is not a sea-based activity, and does not count toward the *Chandris* 30% in-navigation requirement." (*Id.* 3.)  AVI essentially argues that Almquist's time spent doing "dockside maintenance work" does not count as towards whether or not he had a connection to M/Y ALLEGRO while "in navigation," and should thus be excluded.  The Court disagrees.

The Supreme Court has explicitly held that "the underlying inquiry whether a vessel is or is not "in navigation" for Jones Act purposes is a fact-intensive question that is normally for the jury and not the court to decide." *Chandris*, 515 U.S. 347, 373.  So, the Court cannot exclude evidence of "maintenance work on a vessel safely tied to its dock," as the jury could interpret such work to count towards the 30% requirement.  *See id.* (citing 2 M. Norris, Law of Seamen § 30.13, p. 364 (4th ed. 1985) ("[A] vessel is in navigation . . . when it returns from a voyage and is taken to a drydock or shipyard to undergo repairs in preparation to making another trip, and likewise a vessel is in navigation, although moored to a dock, if it remains in readiness for another voyage." (footnotes omitted))).  It is up to the jury to decide whether Almquist's "dockside maintenance work" applies to the 30% calculus.

Accordingly, the Court **DENIES** AVI's motion *in limine* to preclude evidence and testimony of Almquist's dockside maintenance work.

### E.     Motion #5 - To Exclude Evidence of Work Without Documentary Evidence

AVI next seeks to exclude "evidence as to the type of work [Almquist] performed for AVI or the amount of work he performed for AVI or other vessel owners if he did not

produce documentation or otherwise reliably identify that information during discovery." (*Def.'s Mot. #5* [Doc. 73-1] 2.) Almquist does not oppose AVI's motion to the extent that it is "is simply a prophylactic motion designed to preclude the parties from attempting to introduce new invoices or other documents concerning the services Plaintiff performed for Defendant that were not disclosed during discovery," or "[t]o the extent the motion seeks to exclude evidence of services performed by Plaintiff for other yacht owners and any documents associated therewith." (*Pl.'s Opp'n #5* [Doc. 91] 2-3.) However, Almquist opposes to the extent that AVI "is seeking to somehow prevent or restrict Plaintiff from orally testifying in full detail as to the services he performed for Defendant regardless of what invoices the parties were able to find and exchange during discovery." (*Id.* 3.)

AVI argues that Almquist's testimony, unsupported by documentary evidence, does not satisfy Rule 401, subsection (a), which states that evidence is relevant if it has "any tendency to make a fact more or less probable that it would be without the evidence." Fed. Rule Evid. 401.  Specifically, AVI argues that because Almquist is allegedly an alcoholic, his testimony is not credible. (*Def's Mot. #5* 5-6) (citing *Rheaume v. Patterson*, 289 F.2d 611, 614 (2d Cir. 1961)) However, *Rheaume* stands for the opposite position. That case explicitly held that the "determination of [credibility] issues was for the jury, not the judge." *Id.* at 614. Thus, it is not for the Court to exclude such evidence from the jury's consideration.

Next, AVI argues that even if the testimony is relevant, it would be prejudicial and should be excluded pursuant to Rule 403.  Specifically, AVI argues that because Almquist "could not recall at his deposition the identity of his purported employers or provide documentation as to the length of time and type of work he performed[,] [i]ntroduction of this evidence would be especially prejudicial to AVI who did not have the opportunity to question or examine any of the witnesses who could either contradict or verify these statements, nor could it contradict or verify these statements through

documentation (which Plaintiff never submitted)." (*Def's Mot. #5* 6.) The Court does not find this argument persuasive.  AVI will have the opportunity at trial to cross examine Almquist, and if he presents testimony of work that he "could not recall at his deposition," then AVI may attempt to bring this alleged disconnect to the jury's attention.

Finally, AVI argues that Almquist's testimony should be excluded pursuant to Rule 602, which states: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." AVI again points to Almquist's alleged alcoholism, claiming that this affects his memory, and thus, vitiates his personal knowledge. (*Def's Mot. #5* 6-7.) This is the same argument that AVI made under Rule 401, and again, the Court does not find this argument persuasive.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to exclude evidence not produced during discovery and to preclude Plaintiff from testifying about work performed that is not substantiated by documentary evidence. The Court will not allow introduction of additional documentary evidence not produced during discovery.  However, the Court will allow Almquist to testify to relevant facts that are within his personal knowledge.

**F.     Motion #6 - To Preclude Evidence and Testimony Concerning Plaintiff's Purported Entitlement to Maintenance.**

Defendant seeks to preclude Plaintiff from offering evidence concerning his claim for the maintenance portion of the maintenance and cure damages he is seeking. Defendant argues that "[u]nder the circumstances of this case, any award of maintenance to Almquist would be, plain and simple, an unfair and unjustifiable windfall." (*Def.'s Mot. #6* [Doc. 74-1] 4.) Essentially, AVI seeks for this Court to rule, as a matter of law,

that Almquist is not entitled to maintenance.  AVI should have made this argument

through a motion to dismiss or motion for summary judgment.  This argument is

inappropriate for a motion *in limine*.  Motions *in limine* are limited to rulings on the

admissibility of evidence, not for obtaining judgment rulings.  *Engman v. City of

Ontario*, 2011 U.S. Dist. LEXIS 66128, *24 (C.D. Cal. June 20, 2011).  Accordingly, the

Court **DENIES** Defendant's motion *in limine* to preclude evidence or testimony

concerning Plaintiff's purported entitlement to maintenance.


### G.    Motion #7 - To Bifurcate Trial and Exclude Evidence of Financial Condition in Phase I

Defendant seeks to bifurcate the trial, addressing only the liability issues in Phase

I and then, if necessary, addressing the damages issues in Phase II. (*Def.'s Mot. #7* [Doc.

75-1] 1.) Defendant argues that bifurcation is appropriate in maritime cases where

seaman status is at issue. (Id. 4.) (citing *DeRoches v. Sonat Exploration, Inc.*, CIV. A.

91-4506, 1993 WL 121285 (E.D. La. Apr. 12, 1993 and  *McGraw v. J. Ray McDermott

& Co., Inc.*, 81 F.R.D. 23, 24 (E.D. La. 1978) to support this statement).  The Court

agrees in part.

"For convenience, to avoid prejudice, or to expedite and economize, the court may

order a separate trial of one or more separate issues, claims, crossclaims, counterclaims,

or third-party claims." Fed. Rule Civ. Proc. 42(B).

Both parties agree that the threshold issue in this matters is whether Almquist was

employed by AVI as a "seaman."  If the jury ultimately finds that Almquist was not

employed as a seaman, then the jury need not hear evidence concerning the scope of

maintenance and cure and damages.  In that case, for the jury also to hear the entire

evidence on the scope of maintenance and cure and issues regarding damages would be a

waste of judicial time. Therefore, the court believes the most expeditious and least

prejudicial way to address Almquist's employment and seaman status is to bifurcate the trial.

Since the same witnesses and similar evidence will be used throughout all portions of trial, the Court finds it appropriate to use the same jury for all issues.  Thus, the parties will select a jury, after which the Court will bifurcate the trial into a "seaman status" and employment phase(the "first phase"), and a liability and damages phase (the "second phase"). The Court will first receive evidence with respect to Almquist's employment as a seaman.  After the close of evidence in this phase, the jury will deliberate on whether Almquist was employed by AVI as a seaman.  Once this issue is resolved, the parties will be permitted to put on additional evidence of liability and damages, if necessary.

AVI also moves to prevent Almquist from providing evidence of AVI's financial condition and value as a company (1) from the first phase of the trial and (2) until such time as entitlement to punitive damages has been decided by jury.  Because the Court has bifurcated the trial and limited the first phase of trial to determining whether Almquist is a seaman, the Court agrees that evidence of AVI's financial condition and value as a company is inadmissible during the first phase of trial, as it is irrelevant to the seaman status inquiry.  However, at this time, it unclear whether or not such evidence will be relevant in the second phase of trial.  So, any objections AVI has to such evidence being introduced after the first phase of the trial is completed, will be addressed at that time.

Accordingly, the Court **GRANTS IN PART**[6] Defendant's motion *in limine* to bifurcate liability and damages issues, and bifurcates the trial as set out above.

//

//

//

---

[6]The Court notes that AVI requests bifurcation of the trial with a phase to address seaman status and liability.  However, the Court feels that the issues of liability should not be addressed until the initial issues of employment and seaman status have been determined.  Otherwise, if the jury finds that Almquist was not a employed as a seaman, then the time and resources spent determining the scope of liability will have been wasted.

**IV.     CONCLUSION & ORDER**

In light of the foregoing, the parties' pending motions in limine are **GRANTED IN PART** and **DENIED IN PART** as indicated above.  The Court recognizes that the truncated nature of motions in limine may mean that the Court is unaware of important information regarding this motion. The Court is not foreclosing any further argument on these motions during trial by either side.  This decision represents the Court's view of the issues at this time and is subject to reconsideration at any time prior to a final judgment being issued.

**IT IS SO ORDERED.**

DATED: May 8, 2014

M. James Lorenz
United States District Court Judge